UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON
CIVIL ACTION NO. 5:08-CV-438

*- Electronically Filed -*

| | |
|---|---|
| PRIME FINISH, LLC, a Kentucky limited liability company, | PLAINTIFF |
| and | |
| CAMEO, LLC | INTERVENING PLAINTIFF |

v.      **MEMORANDUM IN SUPPORT OF**
**SUMMARY JUDGMENT AGAINST PRIME FINISH**

| | |
|---|---|
| ITW DELTAR IPAC, a division of Illinois Tool Works Inc. | DEFENDANT |
| and | |
| PRIME FINISH, LLC | INTERVENING DEFENDANT |

\* \* \* \* \* \* \* \* \* \* \*

Defendant, ITW Deltar IPAC, a division of Illinois Tool Works Inc. ("ITW"), by counsel, submits this Memorandum in Support of its summary judgment motion against Prime Finish, LLC ("Prime Finish"). Prime Finish's Complaint raises two breach of contract claims against ITW: 1) That Prime Finish was not insolvent when ITW terminated the contract: and 2) ITW incorrectly determined that Prime Finish's quality of work was substandard.

Discovery between ITW and Prime Finish has closed in this case. Prime Finish has come forward with no evidence to support either of its claims. On the other hand, ITW's expert has concluded that Prime Finish was insolvent when ITW terminated the contract for that reason. The contract provided that only one of the termination provisions needed be met for a proper termination. The time to designate experts has long passed, and Prime Finish has not named any experts, especially any who can establish that it was solvent at the time of termination.

1

## STATEMENT OF UNDISPUTED FACTS

On March 15, 2005, ITW and Prime Finish entered into a Product Supply Agreement. (Complaint, Doc. 1, ¶. 3, Exh. A)  The Product Supply Agreement required Prime Finish to paint interior automotive products provided by ITW to Prime Finish. (Id.)  The parties entered into an Amendment to the Product Supply Agreement dated January 3, 2007.  (Id., ¶. 6, Exh. B)  On May 1, 2007, the parties entered into an Addendum to the Product Supply Agreement.  (Id., ¶. 8, Exh. C)  The Product Supply Agreement had a term of forty eight (48) months, expiring on December 31, 2009 unless terminated for contractual cause.  The termination and notice provisions of the Product Supply Agreement as revised are at issue here.

Section 3 of the Product Supply Agreement states that early termination of the Product Supply Agreement may only occur upon the following relevant events of default:

> 3.  The other party ceases to do business, makes a composition or assignment for the benefit of its creditors, makes a general arrangement with its creditors concerning any extension or forgiveness of any of its secured debt, becomes bankrupt or insolvent, suffers or seeks the appointment of a receiver to the whole or any material part of its business, takes any action to liquidate or wind up the whole or any material part of its business, is found subject to any provisions of any bankruptcy code concerning involuntary bankruptcy or similar proceeding, or suffers a material adverse change in its financial position such that payments hereunder may be affected or delayed by a creditors or administrator of the business of the other party.

> 4. Seller [Prime Finish] fails to meet the Quality Control Standards defined by the Boundary Limits agreed between the parties, after notice from Buyer, and after Buyer and Seller have taken all reasonable steps required to resolve the breach, and fails to cure such default within 30 days after written notice of such default is sent to Seller or . . ..

In addition, the May 1, 2007, Addendum states that ITW shall provide ninety (90) days notice to Prime Finish before taking any action to prevent Prime Finish from performing its contractual duties . (Id.)

2

Prime Finish encountered continuing economic problems throughout the term of the Product Supply Agreement prior to ITW's termination. Prime Finish provided ITW with Prime Finish's income statements and balance sheets on a monthly basis. As shown in ITW's August 1, 2008 Notice of Termination (attached hereto as Exh. A) Prime Finish consistently sought price increases and advance payments from ITW so that Prime Finish could meet its payroll and other operating expenses. Specifically, ITW was aware and notified Prime Finish of the following facts regarding Prime Finish's financial condition at the time of termination:

- Prime Finish has repeatedly informed ITW that it has been extending payments to suppliers because of liquidity problems;

- Prime Finish has repeatedly pleaded for ITW to make prepayments and temporarily pay higher prices;

- Despite ITW's willingness to pay temporary price increases and pay invoices a week earlier than required under the stated terms, Prime Finish has continued to post operating losses and experience severe cash flow issues, including a net loss in 2007 of $560,000;

- In January 2008, Prime Finish sorely needed $115,000 to cover payroll and benefit obligations and, last week, Prime Finish once again expressed its concern to ITW that Prime Finish would not be able to meet its upcoming payroll and benefit obligations;

- Prime Finish has indicated a need for further price increases to continue operations;

- Current liabilities of $1.5 million exceeded current assets of only $0.3 million as of April 30, 2008, resulting in an extremely poor current ratio of 0.2;

- The book value of Prime Finish's liabilities exceeded the book value of its assets by nearly $1.0 million as of April 30, 2008; and

- Prime Finish's ownership has refused to invest any additional money.

Prime Finish also woefully failed to meet the Quality Standards defined by the parties agreement. Prior to the termination, on March 13, 2008, ITW informed Prime Finish of these

3

continuing quality problems and demanded the Prime Finish remedy these issues within 30

days.  ITW's termination letter describes these ongoing quality problems.

> On March 13, 2008, ITW informed Prime Finish that ITW was
> experiencing increased calls and ill-will from its customers
> because of quality issues involving all of the then-existing
> programs under the Agreement and demanded that Prime Finish
> resolve all such issues within 30 days.  Despite Prime Finish's
> promise to implement corrective actions, it has failed to resolve
> these issues.  Making matters worse, ITW learned that Prime
> Finish did not even notify its employees of all the quality issues
> identified by ITW. Prime Finish continues to provide products
> that fall woefully short of the required standards under the
> Agreement.

Thus, ITW exercised its right under the Products Supply Agreement to terminate its

relationship with Prime Finish as a result of Prime Finish's insolvency and lack of quality work.

Prime Finish responded to the Notice of Termination with a letter dated August 5, 2008

(Exhibit B hereto).  Prime Finish asserted, without any supporting data, that it was not currently

insolvent.  Prime Finish claimed that the ongoing quality issues had been remedied.  Prime

Finish subsequently took the position with ITW and in this action that ITW had breached the

Products Supply Agreement.

## ARGUMENT

Summary judgment is appropriate where there is insufficient evidence upon which a

reasonable jury could find in favor of the non-moving party.  <u>Dodd v. Dyke Industries, Inc.</u>, 518

F.Supp.2d 970 (W.D.Ky. 2007).  Prime Finish has not and cannot put forth sufficient facts to

overcome ITW's determination that Prime Finish was insolvent and had failed to provide

quality work at the time of ITW's termination of the Products Supply Agreement.  Therefore,

Prime Finish's Complaint should be dismissed.

**I.**      **Prime Finish Was Insolvent At The Time Of Termination.**

ITW retained the services of the Certified Public Accounting firm Cotton and Allen, PSC, in particular Mr. Andrew W. Green, CPA, CVA, CFF ("Mr. Green") to review Prime Finish's financial condition at the time of termination.  Mr. Green reviewed Prime Finish's Monthly Balance Sheets from December, 2006 through December 31, 2008 and Prime Finish's Income Statements from January, 2007 through December 31, 2008.  Mr. Green also reviewed pertinent correspondence during this time period as well as other items list in his report.

Mr. Green's qualifications, analysis, and conclusions are stated in Cotton and Allen's July 1, 2009 expert report (Exhibit C hereto).  Based on his knowledge and expertise, Mr. Green concluded as follows:

> Based on the foregoing, it is the Firm's [Cotton and Allen] expert opinion that the financial information submitted by Prime Finish to ITW indicates that Prime Finish's reported liabilities exceeded its reported assets for the approximate six-month period immediately preceding ITW's issuance of the Notice of Termination.  Accordingly, it is the Firm's expert opinion that it was reasonable for ITW to conclude that Prime Finish was and/or reasonably appeared to be insolvent, as that term is generally defined in the U.S. Bankruptcy code, by or before the Notice of Termination was issued by ITW.

Prime Finish has no expert testimony to counter Mr. Green's/Cotton and Allen's opinion.  The deadline to identify experts has long since passed.  Without the possibility of rebutting the overwhelming evidence that ITW correctly determined that Prime Finish was insolvent at the time of termination, Prime Finish's claim that it was solvent rings hollow. This portion of ITW's Complaint should be dismissed.

II.   **ITW Properly Terminated The Products Supply Agreement As A Result Of Prime Finish's Continued Bad Quality Of Workmanship**.

The second claim by Prime Finish is that ITW incorrectly determined that Prime Finish's quality of work was substandard.  The undisputed facts above show that ITW and its customers continually experienced problems with Prime Finish's work even after repeated efforts by ITW

5

to work with Prime Finish to improve the work.  ITW had every incentive to assist Prime Finish in its work and made many attempts to do so.  Prime Finish must come forward with some evidence to show that its quality had improved at the time of the termination.  Without such evidence, the second claim of Prime Finish must be dismissed.

## **CONCLUSION**

Based on the foregoing, ITW respectfully requests that its summary judgment motion be granted and that Prime Finish's Complaint be dismissed in its entirety.

s\Daniel P. Cherry
DANIEL P. CHERRY
DINSMORE & SHOHL LLP
2500 National City Tower
Louisville, Kentucky  40202
Telephone:  (502) 581-8000
Facsimile:  (502) 581-8111


LEE A. ROSENTHAL
DINSMORE & SHOHL LLP
200 West Vine Street, Fifth Floor
Lexington, Kentucky 40588
Telephone:  (859) 244-7100
Facsimile:  (859) 244-7111

COUNSEL FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that on January 4, 2010, the foregoing was filed electronically with the Clerk of the United States District Court of the Eastern District of Kentucky via the CM/ECF system, which will send Notice of Electronic Filing to:

Albert F. Grasch, Jr.
agrasch@graschlaw.com
firm@graschlaw.com

Kevin G. Henry
khenry@sturgillturner.com
cmorgan@sturgillturner.com
lbarrett@sturgillturner.com

E. Douglas Stephan
dstephan@sturgillturner.com

Daniel P. Cherry
dcherry@dinslaw.com

Lee A. Rosenthal
lrosenthal@dinslaw.com
cmcmullen@dinslaw.com
mcook@dinslaw.com

s/ Daniel P. Cherry
COUNSEL FOR DEFENDANT