# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# CENTRAL DIVISION
# LEXINGTON

**CIVIL ACTION NO. 08-438-JBC**

**PRIME FINISH, LLC,**                                                                              **PLAINTIFF,**

V.               **MEMORANDUM OPINION AND ORDER**

**ITW DELTAR IPAC,**                                                                 **DEFENDANT.**

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on defendant ITW Deltar IPAC's motion for summary judgment on intervening plaintiff Cameo, LLC's intervening complaint (R. 31). The court will grant the motion, because Cameo lacks standing to sue.[1]

## I. BACKGROUND

ITW Deltar makes automobile parts. In 2004, ITW Deltar considered hiring the plaintiff, Prime Finish, LLC, to paint and decorate its parts. Prime Finish was experiencing financial difficulty, however, and it needed ITW Deltar to guarantee a sufficient volume of business to justify fulfilling ITW Deltar's orders. ITW Deltar, Prime Finish, and Cameo devised a solution, which they distilled into two contracts.

The first contract was a Product Supply Agreement between ITW Deltar and

---

[1] Also pending are various motions, which the parties have resolved: defendant ITW Deltar IPAC's motion for summary judgment against plaintiff Prime Finish, LLC (R. 30); plaintiff Prime Finish, LLC's motion for summary judgment against intervening plaintiff Cameo, LLC (R. 32); and intervening plaintiff Cameo, LLC's motion for leave to file a belated response to plaintiff Prime Finish, LLC's motion for summary judgment (R. 39). The court will deny those motions as moot.

Prime Finish. Prime Finish agreed to paint and decorate interior parts provided by ITW Deltar. R. 31 Ex. 1. ITW Deltar agreed to feed Prime Finish a sufficient number of parts at specified prices to sustain specified revenue levels. *Id*. The Product Supply Agreement also provided that ITW Deltar would have to pay an early-termination penalty, based on the number of months completed in the life of the contract, if ITW Deltar canceled the contract early. *Id*. ITW Deltar could avoid the penalty under two circumstances: if cancellation was due to a serious, continuing quality or delivery issue; or if ITW Deltar's customer, Toyota, canceled the Camry vehicle program for which ITW Deltar supplied parts. *Id*.

The second contract was a Production Service Agreement between Prime Finish and Cameo. In that contract, Cameo agreed to finance the installation of a $1.65-million paint line at Prime Finish. R. 31 Ex. 1; R. 38 Herbert-Jones Decl. ¶ 9. The paint line would provide Prime Finish capacity to complete ITW Deltar's orders. Prime Finish agreed to pay royalties to Cameo based on the number of parts that Prime Finish invoiced. R. 31 Ex. 1.

Cameo's sole member is Nicholas Herbert-Jones, who served as Prime Finish's president from 1999 to 2002 and still owns 4.6% of Prime Finish. R. 38, Herbert-Jones Decl. ¶ 3. Herbert-Jones obtained loans on behalf of Cameo and invested his own money to arrange the $1.6 million needed to purchase the paint line. R. 38 Herbert-Jones Decl. ¶ 9. Herbert-Jones personally guaranteed at least $1.3 million of borrowed funds. R. 38 Herbert-Jones Decl. ¶ 35.

Several months after they executed the Production Supply Agreement, Prime Finish and Cameo executed a Modification Agreement, which provided the following:

> Any Penalty Payment received by Prime Finish pursuant to . . . the Production Supply Agreement between Prime Finish and ITW Deltar IPAC dated March 15, 2005 as a result of a failure to place the minimum orders required under . . . that Agreement shall be paid to Cameo.

R. 31 Ex. 2.

ITW Deltar terminated the Product Supply Agreement with Prime Finish on August 1, 2008. ITW Deltar claims that it terminated the contract because Prime Finish became insolvent and failed to meet the quality standards specified in the Product Supply Agreement. R. 31 Ex. 5. Cameo claims that ITW Deltar owes an early-termination penalty because Prime Finish's insolvency does not excuse ITW Deltar from the penalty. Cameo also claims that the quality-control problems that ITW Deltar alleges were not sufficiently serious that ITW Deltar was entitled to terminate the contract without penalty. R. 38 at 6-10.

Cameo claims that it is entitled to collect the early-termination penalty from ITW Deltar, even though Cameo is not a party to the Product Supply Agreement, because Cameo is a third-party beneficiary of that contract, or because Prime Finish assigned its right to collect the penalty payment to Cameo in the Modification Agreement.

This action commenced when Prime Finish sued ITW Deltar for an alleged

3

breach of the Product Supply Agreement. Cameo moved to intervene and asserted its claim against ITW Deltar to recover the early-termination penalty. ITW Deltar now moves for summary judgment against Cameo.

## II. DISCUSSION

Summary judgment is appropriate because Cameo lacks standing to sue ITW Deltar. To enjoy standing, Cameo must establish privity with ITW Deltar. *Presnell Constr. Managers, Inc. v. EH Constr., LLC*, 134 S.W.3d 575, 579 (Ky. 2004). Cameo is not a party to the Product Supply Agreement. Cameo, therefore, must establish privity by showing that it is a third-party beneficiary of the Product Supply Agreement or that Prime Finish assigned to Cameo its right to collect payment of the early-termination penalty from ITW Deltar.

### A. Third-party beneficiary

The plain language of the Product Supply Agreement indicates that Cameo is not a third-party beneficiary. A nonparty to a contract cannot sue for breach of the contract unless the nonparty proves that the contract was made and entered into directly or primarily for the nonparty's benefit. *Bariteau v. PNC Fin. Serv. Group, Inc.*, 285 Fed. App'x 218, 220-21 (6th Cir. 2008) (citing *King v. Nat'l Indus., Inc.*, 512 F.2d 29, 32 (6th Cir. 1975)). A court determines whether a contract was made and entered into directly or primarily for a nonparty's benefit by examining the plain language of the contract. *See Hoheimer v. Hoheimer*, 30 S.W.3d 176, 178 (Ky. 2000); *Long v. Reiss*, 160 S.W.2d 668, 674 (Ky. 1942); *Bariteau*, 285 Fed.

4

App'x at 221; and *King*, 512 F.2d at 32-33.

The plain language of the Product Supply Agreement fails to evince any intention to directly or primarily benefit Cameo. Cameo's name appears nowhere in the Product Supply Agreement. The early-termination penalty section provides that "ITW Deltar will pay the . . . termination penalty," but it does not specify that ITW Deltar will pay the early-termination penalty to Cameo or that the early-termination penalty is for Cameo's benefit. R. 31 Ex. 1 Ex. B. Cameo offers no contract language that overcomes the presumption that the parties did not intend to benefit a third party. *Bariteau*, 285 Fed. App'x at 220-21 (citations omitted).

Instead of the contract language, Cameo relies on extrinsic evidence, including the later-executed Modification Agreement between Prime Finish and Cameo, and a declaration in which Herbert-Jones details the parties' negotiations. The Product Supply Agreement's language, however, is unambiguous, so extrinsic evidence is irrelevant in determining the parties' intent. *Hoheimer*, 30 S.W.3d at 178.

B. Assignment of rights to Cameo

The plain language of the Production Service Agreement and the Modification Agreement between Prime Finish and Cameo is insufficient to serve as an assignment of the right to collect the early-termination penalty from ITW Deltar.

No special form of words is necessary to effect an assignment of contract rights to a third party. *McPhail v. John Hancock Mut. Life Ins. Co.*, 108 F. Supp.

5

902, 906 (W.D. Ky. 1952). That rule, however, does not displace the cardinal rule that the plain language controls when a contract is unambiguous. *Hoheimer*, 30 S.W.3d at 178.

The Modification Agreement provides that any penalty payment "*received by Prime Finish* . . . shall be paid to Cameo." R. 31 Ex. 2 (emphasis added). That language effectively renders an assignment to Cameo impossible. Cameo's right to collect the penalty payment does not accrue until Prime Finish receives it. In construing the provision as an assignment, Cameo reads the "received by Prime finish" language out of the contract. Kentucky law might be liberal in construing a third-party assignment, but it does not provide a license to ignore unambiguous contract language.

    C. <u>ITW Deltar's obligation to pay the early-termination penalty</u>

The parties disagree whether ITW Deltar is obligated to pay the early-termination penalty under the Product Supply Agreement. The court need not reach that issue, because Cameo lacks standing to sue ITW Deltar even if ITW Deltar owes the early-termination penalty.

## III. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that defendant ITW Deltar IPAC's motion for summary judgment on intervening plaintiff Cameo, LLC's intervening complaint (R. 31) is **GRANTED**.

**IT IS FURTHER ORDERED** that defendant ITW Deltar IPAC's motion for summary judgment against plaintiff Prime Finish, LLC (R. 30); plaintiff Prime Finish, LLC's motion for summary judgment against intervening plaintiff Cameo, LLC (R. 32); and intervening plaintiff Cameo, LLC's motion for leave to file a belated response to plaintiff Prime Finish, LLC's motion for summary judgment (R. 39) are **DENIED** as moot.

The only item awaiting disposal is Cameo's claim against Prime Finish. Prime Finish has indicated that an agreed order of dismissal is forthcoming. *See* R. 46. Therefore, **IT IS FURTHER ORDERED** that this action is **DISMISSED WITHOUT PREJUDICE** and **STRICKEN** from the active docket. All deadlines and hearings are **CANCELED AND SET ASIDE**.

**IT IS FURTHER ORDERED** that Cameo and Prime Finish shall **TENDER** an agreed order dismissing the remaining claim with prejudice within 45 days of entry of this order. The court will entertain a motion to re-docket this action within 45 days from entry of this order if settlement is not consummated.

Signed on September 13, 2010

JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY