UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| PRIME FINISH, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil No. 5:08-cv-0438-GFVT |
| and ) | |
| ) | |
| CAMEO, LLC, ) | **ORDER** |
| ) | |
| Intervenor Plaintiff, ) | |
| ) | |
| V. ) | |
| ) | |
| ITW DELTAR IPAC, ) | |
| ) | |
| Defendant. ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on various pretrial motions filed by Defendant ITW Deltar IPAC [R. 158, 159, 160] and Plaintiff, Cameo, LLC, [R. 190.] At the Second Final Pretrial Conference held on May 10, 2017, counsel orally indicated that all pending motions require the Court's attention but objections concerning deposition designations, counter designations, and exhibit issues may be resolved by the parties before trial. [*See* R. 161, 189.] As directed on the telephonic conference, the Court will address the remaining objections to proposed jury instructions at the charge conference during trial. During the charge conference, the Court will provide the parties with draft jury instructions, hear objections from both parties concerning the instructions, and issue a final ruling on the pending objections.

**1**

Defendant ITW moves to exclude testimony from Alex Boone, an investor in Prime Finish, from testifying about Cameo's claimed damages. [R. 158.] Rule 26(e)(1)(A) requires

parties to supplement or correct previous Rule 26(a) disclosures if they learn "that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A). Cameo had disclosed Alex Boone, in a May 4, 2009, filing, as "the majority member/owner of Prime Finish [that] was personally present in discussions with Nick Herbert Jones and Tim Stout wherein it was agreed that Cameo would receive any early termination penalty payment from ITW…" [R. 18 at 2-3.] ITW argues that, since this initial disclosure failed to mention Mr. Boone's knowledge of Cameo's claimed damages, Mr. Boone's testimony should be limited or excluded. [R. 158 at 2-3.]

During the May 10, 2017, telephonic conference, counsel for Cameo notified the court that prior Rule 26 disclosures had provided more comprehensive notice concerning Mr. Boone's testimony. After further review, Counsel for Cameo notified the court that the Disclosures were filed in the Record as Exhibit 3 to Docket Entry 133. [*See* R. 133-3.] Cameo filed these initial disclosures in the record, which included a copy of an email sent on January 25, 2016, to Lee Rosenthal, and other attorneys of record for the Defendant. [R. 192-1.] In these disclosures "Alex Boone: former CEO of Prime Finish" was noticed as a former employee or officer of Prime Finish that is "believed to have knowledge of the course of dealing and arrangements entered between the parties, the quality of the products produced on the paint lines owned by Prime Finish, LLC ("Prime Finish") and Cameo, the termination of the Product Supply Agreement between Prime Finish and ITW Delta [sic] IPAC ("ITW), and damages…" [R. 133-3 at 1-2; R. 192 at 2-3.]

Nevertheless, ITW argues that it has been substantially prejudiced due to untimely disclosure by Cameo. [R. 158 at 4.] The Court's scheduling order [R. 101] required Rule 26(a)(1) disclosures to be completed by May 20, 2016, and supplemental disclosures within 30

2

days of discovery. Later, upon the parties' joint request, discovery deadlines were continued to December 30, 2016. [R. 120.] Therefore, ITW should have been aware of the more comprehensive testimony Cameo sought to elicit from Mr. Boone pursuant to the January 25, 2016, email sent by Lynette Mayo to Defense Counsel as this email was sent well before the Court's original and continued discovery deadlines.

In Cameo's response to Defendant's Motion in Limine to Exclude Testimony from Alex Boone on Cameo's Damages [R. 168], Cameo clarifies the Plaintiff's identification of Mr. Boone "as a witness who will testify as to 'damages incurred' was not intended to refer to the amount of Cameo's damages, but the fact of their existence." [R. 168.] In light of Plaintiff's disclosures, Defendant ITW has not been unfairly prejudiced and Mr. Boone's testimony should not be excluded as there do not appear to be violations of Rule 26(a) by Plaintiff. ITW has been on notice, since December 28, 2016, of the scope of Alex Boone's testimony but has chosen not to depose the witness. Accordingly, Defendant's Motion in Limine [**R. 158**] is **DENIED**. Further objections, if any, as to Mr. Boone's testimony will be considered by the Court during the course of trial.

**2**

Defendant ITW Deltar IPAC moves, *in limine*, for an order to Exclude Evidence and Argument by Plaintiff Cameo relating to Waiver. [R. 159.] This motion was raised after Cameo filed its Pretrial Memorandum which stated, "Cameo believes that the evidence to be adduced at trial may create a question of law as to whether ITW waived (or is estopped from asserting) any right to terminate the Agreement prior to the end of the contract term based upon the grounds set out in Section 3.4 of the Agreement." [R. 148 at 6.] ITW argues that Cameo has not made a waiver or estoppel argument before and that Cameo was "affirmatively obligated to disclose

3

information relating to this argument in a timely manner" in light of ITW's interrogatory that asked Cameo "for each fact or matters of opinion" that Cameo relied on to support its claim to early termination damages. [R. 159 at 2.]

Rule 26(a)(1)(A)(i) requires parties to provide "the name . . . of each individual likely to have discoverable information —along with the subjects of that information—that the disclosing party may use to support its claims or defenses…" Fed. R. Civ. P. 26(a)(1)(A)(i). Also, parties must provide a copy "of all documents . . . that the disclosing party . . . may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(ii). ITW argues that Cameo violated "its affirmative and responsive discovery obligations" by raising this waiver and estoppel argument on the eve of trial and that Cameo should not be allowed to use "previously undisclosed documents" or offer witness testimony that supports the waiver argument. [R. 159 at 5.]

On the May 10, 2017, telephonic conference, Defense Counsel stated that the original motion focused on three issues but that the primary focus of the motion relates to excluding Cameo from presenting argument relating to waiver. ITW believes that Cameo was required to plead the defense under Rule 8 which states that, in "responding to a pleading, a party must affirmatively state any . . . affirmative defenses, including . . . waiver . . . [or] estoppel." [R. 159 at 6, quoting Fed. R. Civ. P. 8(c)(1).] Sixth Circuit precedent does state that, "[a]s a general rule, failure to plead an affirmative defense results in a waiver of that defense." *Old Line Life Ins. Co. of Am. v. Garcia*, 418 F.3d 546, 550 (6th Cir. 2005). Although, Federal Rule of Civil Procedure 7 dictates that the only allowed pleadings are: complaints, an answer to a complaint, an answer to a counterclaim, an answer to a crossclaim, a third-party complaint, an answer to a third-party complaint, and if the court orders one, a reply to an answer. Fed. R. Civ. P. 7(a). In the instant

4

action, the Court did not order Cameo to file a reply to ITW's Answer to Cameo's intervenor complaint.

Cameo believes that the initial complaint filed by Prime Finish [R. 1] and Cameo's intervening complaint (which incorporated Prime's complaint) [R. 16] adequately provided notice to Defendant that Plaintiff will argue that ITW breached the contract and terminated the Product Supply Agreement early. [*See* R. 167 at 1-2.] In answer to the Prime Finish Complaint, ITW raised affirmative defenses stating that "[t]he Complaint is barred by Prime Finish's own breach of contract" and "ITW asserts any defense associated with the terms of the Product Supply Agreement, the Amendment, and Addendum." [R. 4 at 3.] These affirmative defenses were reiterated in ITW's Answer to Cameo's Intervening Complaint, where ITW stated that the "Intervening Complaint . . . is barred by Prime Finish's or Cameo's own breach of contract, relating to each other or to ITW," and "ITW asserts any defense associated with the terms of the Product Supply Agreement with Prime Finish, the Amendment and Addendum thereto, along with any applicable language of any agreements between Cameo and Prime Finish." [R. 17 at 3.] Cameo now argues that any evidence or arguments that relate to waiver are responsive to ITW's affirmatively pled defenses.

The Product Supply Agreement made between ITW and Prime Finish did not contain a "no waiver" provision. [*See* R. 129-4.] Plaintiff believes that ITW has not specifically identified a "single exhibit or line of testimony that Cameo might offer in support of waiver that appears on Cameo's Exhibit list yet has not been previously disclosed." [R. 167 at 4.] This Court is also not aware of additional evidence or documents that ITW believes to be untimely disclosed. Federal Rule of Civil Procedure 8 details the "General Rules of Pleading." Fed. R. Civ. P. 8. The Rule details Affirmative Defenses under heading (c)(1) which states, "In responding to a pleading, a

5

party must affirmatively state any avoidance or affirmative defense including… estoppel . . . [and] waiver." *Id.* at Rule 8(c)(1). As mentioned before, Defendant ITW responded to the complaints filed by Prime Finish and Cameo by raising several affirmative defenses against Cameo's claims. [R. 17 at 3.] Now, in response to Defendant's affirmative defenses, Plaintiff Cameo seeks to argue that they did not breach the contract because ITW waived any breach that may have occurred. Since ITW raised the affirmative defense that suggests Prime or Cameo breached the contract, ITW is essentially demanding that Plaintiff proactively plead the response of waiver or estoppel before ITW raised the affirmative defense that would trigger that necessity. The Federal Rules of Civil Procedure do not go this far, as the rules only require affirmative defenses to be raised by a party that is "responding to a pleading." Fed. R. Civ. P. 8(c)(1).

> In the initial interrogatories, Defendant ITW's Interrogatory No. 4 stated:
>
> Please state each fact or matters of opinion upon which you rely in support of the averments contained in the prayer for relief of your Intervening Complaint that the "ITW owes a Penalty Payment for its early termination of the Prime Finish Product Supply Agreement before the expiration of its terms equal to the sum of Three Hundred Seventy-Five Thousand Dollars ($375,000)." In regard to said averments:
>      a. State the name and present address of each person whom you believe to have knowledge or information regarding said facts; and
>      b. If your answer is supported by documentary evidence, provide copies of each and every document upon which you rely to support your answer.

[R. 24 at 2-3.] So, while ITW did ask for "fact or matters of opinion" that interrogatory concluded with specific demands for names, addresses, and citation to documentary evidence. Cameo responded with listing the names of Prime Finish and ITW employees and, in response to part b, that "Documents attached to Cameo's Intervening Complaint, and others in the possession of Prime Finish and/or ITW, including correspondence. Following discovery of same, Cameo will be able to identify all documents it will reply upon." [*Id.* at 3.]

In the motion to exclude, response, and reply, many authorities are cited, but largely for general propositions that are either not relevant or relevant and non-binding. [*See, e.g.,* R. 159 at 4]; *see also, First Nat. Bank of Louisville v. Hurricane Elkhorn Coal Corp. II*, 763 F.2d 188, 190 (6th Cir. 1985) (holding that "setoff is an affirmative defense which must be pled and proven by the party asserting it); [R. 167 at 2 quoting 5 Fed. Prac. & Proc. Civ. § 1276 (3d ed.) ("On occasion, a plaintiff's complaint will contain allegations that seek to avoid or defeat a potential affirmative defense that he or she anticipates will be included in the responsive pleading; technically this is improper pleading because those allegations are not an integral part of the plaintiff's claim for relief and lie outside his or her burden of pleading . . . [I]f the plaintiff purports to negative an affirmative defense by way of anticipation but does not admit the effectiveness of the defense in his pleading, the district court should treat the plaintiff's references to the defense as surplusage.")]

Since none of the cited authorities are particularly persuasive, the Court's primary concern are notions of fair play. District Courts often prevent new evidence or arguments from being introduced at trial because Rule 26(e) "seeks to prevent trial by ambush." *Costello v. Lungaro*, 54 F.3d 776 (6th Cir. 1995). Absent from the instant action, is the evidence of ambush. Plaintiff pled damages from breach of contract and Defendant answered the complaint with affirmative defenses that seek to bar recovery due to Plaintiff's alleged breach. [R. 20 at 2-3.] The logical and predictable response to the Defendant's affirmative Defense is Plaintiff's argument of waiver and/or estoppel. The evidence of waiver by Prime is a defensive response to ITW's answer, not an ambush.

Accordingly, the Defendant's Motion in Limine to Exclude Evidence and Argument Relating to Waiver [**R. 159**] is **DENIED**. Separate from the issue of admissibility, is the process

7

of creating jury instructions for consideration by the fact-finder. Sufficient evidence supporting waiver must be presented during the course of trial, otherwise the Court will not allow the jury to be instructed on this theory. As stated by the Court on the May 10, 2017, telephonic call, "The cure for not putting on proof that supports what you say in your opening statements . . . is the fact that there would not be a jury instruction allowed if the evidence didn't support it, and the party that doesn't support what they say bears the consequences." [R. 196 at 19.]

### 3

Defendant ITW Deltar IPAC also moves, *in limine*, for an order to Exclude Nicholas Herbert-Jones from Offering Inadmissible Testimony under Rules 602 and 701. [R. 160.] Mr. Herbert-Jones was the sole owner and manager of Cameo [R. 166], had served as the President of Prime Finish from 1999 to 2002, and continued to be a minority owner of Prime Finish. [*See* R. 59 at 2.] Defendant asserts that Mr. Herbert-Jones lacks personal knowledge of Prime's insolvency and paint quality issues and that he cannot calculate damages due to a lack of personal knowledge or qualification. [*See id.*] ITW suggests that Mr. Herbert-Jones' testimony would be appropriately excluded, on a large variety of topics, pursuant to Rules 602, 701, and 1002, of the Federal Rules of Evidence.

### a

During Mr. Herbert-Jones' deposition, Mr. Herbert-Jones described the nature of his participation with Prime Finish. As a minority shareholder he attended "shareholder meetings maybe quarterly" but that he "was largely uninvolved in operational management of the business." [R. 160-2 at 4.] After the new Cameo paint line was installed, Mr. Herbert-Jones clarified that "I was definitely not involved in the day-to-day operation of Prime Finish." [*Id.*] He was not provided quality documents concerning all the paint lines at Prime Finish, but did

8

receive periodic spreadsheets detailing spindle line use. [*Id.* at 5.] Mr. Herbert-Jones admits that he "wouldn't be involved in any meetings about production, engineering, or quality." [*Id.* at 5.] He "wanted to concentrate on the sales role," so he took a hands off approach to Prime Finish production. [*Id.* at 6] Finally, Mr. Herbert-Jones was unaware of the March 13, 2008, letter from ITW concerning quality problems with Prime's paint jobs until "after ITW had terminated the contract." [R. 160-2 at 7.]

Federal Rule of Evidence 602 requires sufficient evidence to "support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony." Fed. R. Evid. 602. The personal knowledge requirement of Rule 602 prevents witnesses from testifying based upon information learned in a second-hand way from other sources. *See Stiles ex rel. D.S. v. Grainger County, Tenn.*, 819 F.3d 934, 842 n.2 (6th Cir. 2016) (finding that witness testimony is inadmissible because it was "not based on DS's personal knowledge . . . because DS stated he knew this information" from a friend that had been a first-hand witness); *Totman v. Louisville Jefferson Cty. Metro Gov't*, 391 F. App'x 454, 464 (6th Cir. 2010) (Citing Fed. R. Evid. 602 to support the proposition that "speculation is not admissible evidence.") Rule 701 requires a lay witness's opinion to be limited to one that is "rationally based on the witness's perception, helpful . . . and not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.

Mr. Herbert-Jones had been involved with Prime Finish in the past and his testimony detailed multiple avenues of continuing involvement with the company. He received reports on the spindle line that Cameo funded, was highly engaged in selecting that paint line, personally chose the company that installed the line, and made "sure that the set up of the line incorporated

9

the important features that were appropriate for ITW business." [R. 166 at 1-2.] Due to his role as Cameo's principal and his involvement with Prime Finish as a minority owner, Mr. Herbert-Jones "participated in the drafting of the Product Supply Agreement between ITW and Prime Finish." [*Id.* at 2.] From this experience, Mr. Herbert-Jones has "first-hand knowledge of the date on which the Cameo spindle line was expected to be up and running . . . and the date on which all parties expected work to begin on the Camry 044L program…" *Id.*

Cameo details the frequent contacts between Mr. Herbert-Jones and Tim Stout of Prime Finish, Randy Baudry of ITW, and Pat Bowden of ITW. [R. 166 at 2.] When asked whether he discussed quality issues concerning the Cameo spindle line with Tim Stout on a "regular basis," Mr. Herbert-Jones responded "I wouldn't say a regular basis," but this response suggests that Mr. Herbert-Jones and Mr. Stout did irregularly discuss quality issues. [*Id.*] The deposition does not further explore the extent of Mr. Herbert-Jones' discussions concerning quality issues. As to Prime Finish, Mr. Herbert-Jones did receive (somewhat sporadic) financial condition updates from the company but he agrees that he was not being "involved in finances or figuring out the finances or making decisions as far as trying to cut costs…" [R. 166-1 at 19.]

b

First, Defendant ITW moves the Court to exclude Mr. Herbert-Jones' testimony regarding Prime's painting quality or insolvency. ITW states that the witness has no personal knowledge of these matters whereas Cameo argues that the deposition of Mr. Herbert-Jones "makes clear that he has a more than adequate basis to provide general fact testimony regarding ITW's allegations that Prime Finish became insolvent during the course of the Agreement or that Prime Finish's painting quality was inadequate…" [R. 166 at 3.] Logically, neither party can be entirely correct.

ITW inaccurately states that the Mr. Herbert-Jones has admitted to having "no personal knowledge about Prime's painting or financials."[1] [R. 160 at 5.] The generalized objections lodged by ITW to Mr. Herbert-Jones' testimony concerning Prime's insolvency and painting quality are too broad and vague for the Court to grant a ruling, *in limine*. Mr. Herbert-Jones has relevant, but at times limited, personal experience and knowledge of Prime's financial condition and painting quality. For this reason, the Defendant's Motion [R. 160] will not be granted as to this testimony. Undoubtedly, the statements by Mr. Herbert-Jones will prevent the witness from testifying as to comprehensive quality issues at Prime and his knowledge as to financial information is narrower than that of Prime's day-to-day operational managers. Ultimately, these arguments must be raised in the context of direct or cross examination at trial so that the Court may consider context, specific objections to testimony by the parties, and Mr. Herbert-Jones' personal experience with Prime, which is generally extensive but also significantly limited.

c

Next, in this same motion, ITW argues that Mr. Herbert-Jones cannot offer lay opinion testimony regarding Cameo's damages. Rule 701 states that non-expert witnesses are limited to opinions that are "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Mr. Herbert-Jones has prepared a document, on behalf of Cameo, that details "lost royalties payments" that assume a completed contract term and the "seven percent royalty that Cameo would have expected to receive for the painting of those parts." [R. 160-2 at 14.] Interestingly, in these damages calculations, Mr. Herbert-Jones

---

[1] It is true, that Mr. Herbert-Jones was not highly involved in the day-to-day operations at Prime Finish, but as a minority shareholder he attended shareholder meetings, was provided updated financial condition documents from Prime Finish, and received reports on the spindle line utilization. *See* R. 160-2; *See also*, deposition testimony where Mr. Herbert-Jones detailed the Prime Finish business updates and how he was provided with "P&Ls and balance sheets at those meetings." [R. 160-2 at 10.]

11

assumes that the Toyota Tundra 180L program will continue beyond the four years encompassed in the Product Supply Agreement because "there was an email from Dave Bonadonna indicating that the program was going on for potentially another five years." [*Id.*]

Before turning to the evidentiary concerns with Mr. Herbert-Jones' testimony on damages, it is improper for the jury to be presented with damages calculations that exceed the scope of the Product Supply Agreement's forty-eight (48) month term. [*See* R. 130-3 at 2.] During his deposition, Mr. Herbert-Jones affirmed that "[i]t is possible for a program to end early." [R. 160-2 at 15.] Damages, if any, should be based upon the life and expectations of the original Product Supply Agreement made between Prime and ITW. Mr. Herbert-Jones created this document detailing damages using his "educated estimate based on some historical numbers done at Prime Finish and by some incidental information in the marketplace." [R. 160-2 at 17.]

Defendant alleges that this "guesswork" should be excluded as "courts have repeatedly held that witnesses cannot offer lay opinion testimony regarding complicated damages issues." [R. 160 at 7.] ITW cites to *JGR, Inc. v. Thomasville Furniture Indust., Inc.*, 370 F.3d 519 (6th Cir. 2004), a case where, Mr. James Gornik, a certified public accountant and lawyer, "testified about the amount of lost profits and loss of business value" suffered by JGR. *Id.* at 524. In *JGR*, Gornik was unequivocally recognized as a lay witness. *Id.* Gornik's testimony was inadmissible, in part because he failed to independently verify the information that he relied on in making his lost profit calculations. *Id.* at 526.

*JRG* is easily distinguished from the instant action and provides illuminating commentary on the admissibility of Mr. Herbert-Jones' testimony concerning Cameo's lost profits. *JGR* quotes Advisory Committee Notes for the 2000 Amendments to Federal Rule of Evidence 701 which states:

> [M]ost courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert. Such opinion testimony is admitted not because of experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business. The amendment does not purport to change this analysis.

*JGR, Inc. v. Thomasville Furniture Indust., Inc.*, 370 F.3d 519, 525 (6th Cir. 2004). Unlike Gornik, "who had never been an owner, officer or director of JGR," Mr. Herbert-Jones is the sole owner and only principal of Cameo, LLC. *Id*.

*JGR* thoroughly discusses a Fifth Circuit case, *DIJO, Inc. v. Hilton Hotels Corp.*, 351 F.3d 679, 685 (5th Cir. 2003), where a district court improperly allowed a "financial consultant to testify as a lay witness regarding the plaintiff company's lost profits." *JGR, Inc.*, 370 F.3d at 525. In *JGR*, the Sixth Circuit mirrors the reasoning of *DIJO* and the Fifth Circuit, by quoting the Fifth Circuit opinion which recognized the financial consultant as an improper lay witness because, despite the financial consultant's substantial business experience, "[s]uch generic industry experience does not pass Rule 701 scrutiny . . . and a lay witness who was never employed by or directly involved in a business is unlikely to have the type of first-hand knowledge necessary to provide reliable forecasts of future lost profits." *JGR, Inc. v. Thomasville Furniture Indust., Inc.*, 370 F.3d 519, 525 (6th Cir. 2004) (quoting *DIJO, Inc. v. Hilton Hotels Corp.*, 351 F.3d 679, 686 (5th Cir. 2003)). Unlike *JGR* and *DIJO*, Mr. Herbert-Jones does not have a "lack of the requisite first-hand, personal knowledge of the company about which he" will testify. *JGR, Inc.*, 370 F.3d at 526. But, Mr. Herbert-Jones has not been recognized as an expert, nor will he be allowed to testify as a "pseudo-expert." Therefore, his testimony must be based on his rational perception as outlined in Rule 701 and his first-hand, personal knowledge of Cameo and its business dealings.

ITW also cites to *United States v. Madison*, 226 F. App'x 535, 543 (6th Cir. 2007) to support the proposition that "appraisal of the economic value of a lost contract is necessarily a subject for expert opinion." [R. 160 at 8.] Here, the Sixth Circuit distinguished determining the value of a lost contract, as in *DIJO*, from simple "matter[s] of arithmetic within the capacity of any reasonable lay person" as these simple calculations are "more aptly characterized as a lay opinion under Fed. R. Evid. 701." United *States v. Madison*, 226 F. App'x 535, 544 (6th Cir. 2007) (quoting *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1124 (10th Cir. 2005)). But, in the instant action, Mr. Herbert-Jones claims to have the requisite and "extensive personal knowledge regarding the cost of the paint line, the parties' expectations as to the manner in which Cameo was to be repaid for the investment, and the disastrous consequences to Cameo that flowed from ITW's" alleged breach. [R. 166 at 5.] Mr. Herbert-Jones' claimed personal knowledge as to damages could not be more different from the lay witness in *DIJO*, Mr. Skinner, who admitted on the stand that he "simply did not have the requisite first-hand, personal knowledge about DIJO and the Project necessary to qualify as a Rule 701 opinion witness." *DIJO, Inc. v. Hilton Hotels Corp.*, 351 F.3d 679, 686 (5th Cir. 2003).

In light of the witnesses' role as the sole principal and owner of Cameo, LLC, and his extensive personal knowledge with Cameo's operations and financials, it is appropriate to allow Mr. Herbert-Jones to testify as a lay witness as to Cameo's damages. *JGR, Inc. v. Thomasville Furniture Indust., Inc.*, 370 F.3d 519, 525 (6th Cir. 2004) (referencing Advisory Committee Notes for the 2000 Amendments to Rule 701 which states that "[m]ost courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an account, appraiser, or similar expert. Such opinion testimony is admitted not because of experience, training or specialized knowledge within the

realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business.") Accordingly, Defendant's Motion to Exclude Nicholas Herbert-Jones from Offering Inadmissible Testimony Under Rules 602 and 701 [**R. 160**] is **GRANTED in PART and DENIED in PART**. The Motion is granted in part, because, Mr. Herbert-Jones cannot calculate damages to include extended product runs based upon emails of dubious origin that suggest the programs may continue beyond the forty-eight (48) month term contemplated by the Product Supply Agreement. Defendant is, of course, allowed to attack what are believed to be "speculative calculations—based on estimates and dubious assumptions," through cross examination. If ITW believes that Mr. Herbert-Jones is testifying outside the scope of his personal knowledge, the Court will consider further objections throughout the course of trial.

**4**

Plaintiff Cameo has also filed a motion in limine to exclude any evidence of estoppel regarding the early termination fee. [R. 190.] Following this Court's ruling on the motions for partial summary judgment [R. 180], ITW notified Cameo of the Defendant's intention to add the following Court filings to the Exhibit list: (1) Cameo's Status Report [R. 89], (2) Cameo's Motion for Leave to File an Intervening Complaint [R. 90], (3) Cameo's Reply brief [R. 93], (4) Cameo's First Amended Intervening Complaint [R. 95], and (5) Cameo's Second Amended Intervening Complaint. [R. 107.] Now, Cameo believes ITW will present evidence that suggests Cameo is "estopped from recovering compensatory damages in addition to the Early Termination fee." [R. 190 at 2.] Cameo wishes to prevent previous characterizations of the Early Termination fee as liquidated damages, by Plaintiff's counsel, from being considered by the jury.

Federal Rule of Evidence 403 provides Courts with the discretion to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The Product Supply Agreement at issue was a contract entered into between Prime Finish and ITW. The agreement itself and intent of Prime and ITW, not Cameo, will be considered by the fact-finder to determine whether the Early Termination Penalty was contemplated as a liquidated damages provision. Cameo argues that the evidence ITW seeks to offer would be prejudicial and irrelevant and that "legal characterizations made in briefs and pleadings are not properly offered as substantive evidence at trial." [R. 190 citing 87 C.J.S. Witnesses § 783 ("Pleadings consisting of legal conclusions may not be used as inconsistent statements to impeach the pleader.")] Cameo asserts that they have not made an admission of fact and the Court has recognized, throughout this litigation, that the nature of the early termination penalty is disputed. [R. 190 at 2-3.]

In Cameo's Objection to Defendant's Updated Exhibit List [R. 189], Cameo more fully details the objections to the updated exhibit list that was filed by ITW. Plaintiff argues that Defendant's updated list is a late submission and that these filings will be used to "re-argue" Cameo's characterization of the penalty as "liquidated damages." [R. 189 at 2.]

Besides referencing Rule 403, neither party cites mandatory authority. In Cameo's Reply in Response [R. 195], the Plaintiff clarifies that the motion solely seeks to prevent ITW from introducing previous court filings to demonstrate "that Cameo is estopped from arguing that the Early Termination provision was not intended as the sole and exclusive measure of damages for breach of the Product Supply Agreement, and/or that Cameo has somehow admitted that the Early Termination provision is a liquidated damages provision that provides its only measure of

damages." [R. 195 at 1-2.] The Court has already determined that there is an issue of fact for the fact-finder regarding the nature of the early termination penalty and whether it was a liquidated damages provision.[2] Introduction of these court filings, for purposes mentioned by Plaintiff above, would be improper and could easily confuse the issues or mislead the jury. Accordingly, and pursuant to Federal Rule of Evidence 403, Cameo's Motion in Limine [**R. 190**] is **GRANTED** in a manner consistent with this opinion. If Defendant ITW wishes to introduce the evidence for reasons other than those specifically precluded by this order, any objection by Plaintiff will be considered during the course of trial.

**5**

Accordingly, and being otherwise sufficiently advised, the Court hereby **ORDERS** as follows:

1. Defendant's Motion in Limine to Exclude Testimony from Alex Boone on Cameo's Damages [**R. 158**] is **DENIED**; and

2. Defendant's Motion in Limine to Exclude Evidence and Argument Relating to Waiver [**R. 159**] is **DENIED**; and

3. Defendant's Motion in Limine to Exclude Nicholas Herbert Jones from Offering Inadmissible Testimony Under Rules 602 and 701 [**R. 160**] is **GRANTED in PART and DENIED in PART,** consistent with the findings of this opinion; and

4. Intervening Plaintiff Cameo's Motion in Limine to Exclude Any Evidence of Estoppel Regarding the Early Termination Fee [**R. 190**] is **GRANTED**, consistent with this opinion.

---

[2] The Court's ruling on ITW's motions for partial summary judgment clarified that an issue of fact existed as to "whether the parties intended the early termination penalty to serve as liquidated damages." [R. 180 at 21.]

This the 12th day of May, 2017.

Gregory F. Van Tatenhove
United States District Judge